### PAN–AMERICAN PETROLEUM & TRANSPORT CO. v. UNITED STATES.

District Court, E. D. Louisiana, New Orleans Division. May 12, 1928.

No. 18933.

Terriberry, Young, Rault & Carroll, of New Orleans, La., for plaintiff.

E. E. Talbot, Asst. U. S. Atty., of New Orleans, La.

DAWKINS, District Judge. Robert Schumacher, an alien (German) came to the United States in 1925, as the third engineer of the German steamer Robert, and landed at the port of Charleston, S. C. He promptly deserted, and within a few days shipped as a marine engineer on the dredge Canton, belonging to the Salmons Dredging Company of Charleston, which was towed to Aruba, Danish West Indies, under a contract which bound his employer to return him 'to the port of departure. The latter had a contract with certain oil companies to dredge a channel from the open sea to an oil refinery on said island of Aruba, which was not completed until the fall of 1926, and during which time Schumacher remained continuously in service as a seaman. When this work was completed it was found that the Canton was unseaworthy, and his employer made provision with the plaintiff for his return on one of its ships. Schumacher was brought to the city of New Orleans without charge upon the steamer I. C. White, belonging to plaintiff, which arrived in port on October 22, 1926. Schumacher remained at all times in the employ of the dredging company.

Upon his arrival in New Orleans, he was examined, as in the case of an alien passenger, and having no visé was excluded and held for deportation by immigration officials claiming to act under the provisions of section 13 of the Immigration Act of 1924. 8 USCA § 213. Schumacher informed the officers of his occupation, but stated that it was his purpose to remain in the United States if he could do so. The plaintiff was thereupon notified of the intention to assess against it a fine of $1,000 upon the charge of having brought to this country an immigrant not in possession of an immigration visé, in violation of section 16 of the said Immigration Act. Plaintiff was allowed to make a defense by counsel before the Board of Review, in the office of the Secretary of Labor. On February 28, 1927, the Board held that a fine had been incurred, and accordingly assessed it. A rehearing was had before the Second Assistant Secretary of Labor, and that decision was reversed. The decision first rendered was received by the Commissioner of Immigration at New Orleans on March 12, 1927, and was immediately made known to the collector of customs, custodian of the money, and the latter promptly remitted to the Secretary of the Treasury. The second decision was received in New Orleans on March 14, 1927, before the money had been actually covered into the Treasury. A third decision was subsequently rendered by the First Assistant Secretary of Labor, reversing the Second Assistant, and affirming the action of the Board of Review. Thereafter the money passed into the Treasury, and this action is brought under appropriate statute for recovery.

The master of the I. C. White knew that Schumacher was a seaman and that he had been employed on the dredge Canton, but brought him to New Orleans merely as an accommodation to his employer.

There is no dispute as to the facts, and the sole question is as to the legality of the action of the immigration authorities in imposing the fine of $1,000 upon the plaintiff. It is not contended that Schumacher's original appearance in the United States was as an immigrant, since he came here as a bona fide seaman, entitled to the privileges accorded that class of .persons. See sections 3, 19, and 20, Immigration Act of 1924. 8 USCA §§ 203, 166, 167. It is also conceded that he had the right, after deserting, within the delays provided by statute, to seek employment as a seaman, upon either an American or other vessel engaged in foreign service; but the government does contend that, because he came back into the United States as a passenger on the I. C. White without visé and with the declared intention of remaining here, if possible, he thereby became subject to the rules applicable to immigrants, and that the plaintiff was liable under the immigration law for bringing him in in that manner. The master of the ship made no inquiry as to his purpose to remain, but brought him to New Orleans under the circumstances mentioned as an employee of the dredging company.

Some mention has been made in the brief about the failure to comply with sections 19 and 20 of the Immigration Act of 1924, when Schumacher originally arrived on the steamship Robert; but, in my opinion, that has nothing to do with this case, as it concerned alone the government and the vessel in question. As stated, it seems to be admitted that he departed promptly upon the Canton on a foreign voyage, and in my opinion his status as a seaman was

retained throughout, so that, when he arrived upon the I. C. White, the rights of the parties were governed by these same sections (3, 19, and 20); that is, he was a bona fide seaman and entitled to such privileges as were accorded by section 19 of the act under regulations prescribed by the Secretary of Labor, and the I. C. White's only duty was to see that neither he nor it violated the provisions of section 20. If they did, then the penalties therein provided would become applicable. I am of the view that the very purpose of these provisions (sections 19 and 20) was to apply to bona fide seamen and to prevent their taking advantage of privileges so given for the purpose of coming into the United States as inadmissible aliens. When the matter was investigated by the immigration officials at New Orleans, they discovered the intention of Schumacher, and had both the opportunity and the duty to exclude or deport him, either upon the same vessel or another, as circumstances warranted. I do not think, under the conditions mentioned, in so far as the plaintiff or its vessel are concerned, that the case could be treated as that of an immigrant within the meaning of the law. In my opinion the situation was no different to what it would have been had the immigration officials, upon investigation at the time of the arrival of the Robert found that Schumacher had the same intention that he expressed when he reached New Orleans. In such event, no doubt the vessel would have been required to comply with sections 19 and 20, or the Department would have deported Schumacher, as provided therein. This I think was the extent of the power of the Department under the facts shown in the present case. See Nagle v. Hansen (C. C. A.) 17 F.(2d) 557.

My conclusion, therefore, is that the fine was illegally imposed, and there should accordingly be judgment for the plaintiff. A proper decree may be presented.